IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PATTY J. BAXTER,                              )
                                             )
                    Plaintiff,               )
                                             )      CV 04-856-MO
        v.                                   )
                                             )
JO ANNE B. BARNHART, Commissioner of         )      OPINION AND ORDER
Social Security,                             )
                                             )
_____Defendant._____ )

LINDA ZISKIN
4800 SW Meadows Road, Suite 300
Lake Oswego, Oregon 97035

RICHARD A. SLY
1001 SW 5th Avenue, Suite 1901
Portland, Oregon 97204

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland, Oregon 97204

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle, Washington 98104
Attorneys for Defendant

**MOSMAN**, District Judge:

1 - OPINION AND ORDER

## INTRODUCTION

Plaintiff Patty Baxter brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is affirmed.

## BACKGROUND

Ms. Baxter was born April 1, 1957. She attended school through the eighth grade. She worked as a sewing machine operator in an upholstery shop for a number of years, ending in 1997. On her Disability Report, Ms. Baxter reported that she stopped that work because "it was too hard to keep her knee bent" as required to operate a sewing machine. Tr. 132.[1] Elsewhere she reported that she stopped working when the owner of the upholstery shop retired. Tr. 333.

Ms. Baxter later worked briefly as a fast food worker, but had knee pain from the prolonged standing required for that work and stopped because of "not being able to stand, sit or walk very long." Tr. 87.

Ms. Baxter has had several surgical procedures on her right knee, including arthroscopy to repair the meniscus in 1979, a debridement and tibial osteotomy in May 1999, and a total knee replacement in December 1999.

Ms. Baxter alleges disability beginning September 1, 1996, due to residual effects of her knee surgeries and an injury to the same knee in July 1999. Tr. 87, 132.

## DISABILITY ANALYSIS

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Ms. Baxter challenges the ALJ's findings at steps two, three and five of his decision.

At step two, the Commissioner must determine whether the claimant has any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. The claimant will be found not disabled if the ALJ determines that she has no severe impairment. 20 C.F.R. § 416.920(c). If the claimant has severe impairments, the ALJ must proceed to step three.

At step three, the Commissioner must determine whether the claimant has impairments that meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the ALJ determines that the claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis,

3 - OPINION AND ORDER

despite the limitations imposed by his impairments. 20 C.F.R. §§ 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 420.920(g)(1).

## THE ALJ's FINDINGS

At step two, the ALJ identified three medically determinable impairments that satisfied the regulatory definition of "severe" because they significantly limited Ms. Baxter's ability to perform basic work activities: "status post right knee total replacement, chronic bronchitis and borderline intellectual functioning." Tr. 25.

At step three, the ALJ found that Ms. Baxter's impairments were not severe enough to meet or equal any condition in the Listing of Impairments.

The ALJ assessed Ms. Baxter's RFC as follows:

> the claimant retains the residual functional capacity for modified light work. She may sit 6 out of an 8-hour work day stand for about 2 hours out of an 8-hour workday with normal breaks. She can only occasionally climb ladders, ropes, scaffolds and balance. She could never kneel or crawl. Because of her asthma and chronic bronchitis, she also should avoid moderate exposure to fumes, odors, dusts, gases and other known allergens. However she could perform simple 1-2-3 step process work and maintain routine contacts with the public and co-workers. She could only occasional reach with her upper extremities.

Tr. 27.

4 - OPINION AND ORDER

At step five of the sequential evaluation, the ALJ found that Ms. Baxter retained the RFC to perform work in the national economy. He identified examples of such work drawn from the testimony of the impartial vocational expert (VE): production assembly worker, office helper and cashier. Accordingly, the ALJ concluded that Ms. Baxter was not disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Ms. Baxter contends the ALJ failed to identify all of her severe impairments at step two of his decision. She contends he failed to properly determine whether her combined impairments satisfy the regulatory criteria for any condition in the Listing of Impairments at step three.

5 - OPINION AND ORDER

Ms. Baxter asserts that the ALJ failed to accurately assess her RFC because he improperly rejected the findings and opinions of three physicians, discredited Ms. Baxter's testimony and failed to consider the combined effects of her impairments.

Ms. Baxter also contends the ALJ improperly failed to develop the record by refusing to obtain records Ms. Baxter identified and requested.

## I. <u>Severe Impairments</u>

Ms. Baxter asserts that the ALJ erred at step two by failing to identify all of her severe impairments. She does not specify additional impairments she believes the ALJ should have found, except to point to evidence that she has back pain related to her knee pain.

Ms. Baxter's argument fails because the ALJ did not decide her claim at step two of the sequential process. The inquiry at step two is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant has no severe impairments, the Commissioner will find her "not disabled" without continuing to the remaining steps of the sequential process. 20 C.F.R. § 404.1520(c); SSR 85-28. The ALJ found that Ms. Baxter presented sufficient evidence of severe impairments to surmount the *de minimis* screening tool and continued through the remaining steps of the sequential process until he reached a conclusion at step five.

It is the claimant's burden to show that her impairment is severe. *Edlund,* 253 F.3d at 1159-60. An impairment is severe if it significantly limits the claimant's ability to do basic work activities. *Id.* These include physical functions, such as walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. § 416.921.

In the Disability Report Ms. Baxter filed shortly after her knee replacement surgery, she alleged that she had "lower back sprain from using crutches" and that she "can't walk very long"

6 - OPINION AND ORDER

due to back and leg pain.  Tr. 132.  In addition, she cites a brief medical notation describing a transient back sprain from a fall sometime between January and March 1999.  Tr. 431.

The ALJ found no evidence that low back pain was "more than transient, or under active treatment, or symptomatic or resulted in significant limitations in the claimant's ability to perform basic work activities."  Tr. 25.  Ms. Baxter does not offer any evidence suggesting that the ALJ's conclusion is based on an unreasonable interpretation of the record.  Accordingly, the ALJ's finding that Ms. Baxter failed to show she has additional severe impairments must be upheld.

## II.    Listing of Impairments

Ms. Baxter contends the ALJ erred by failing to find her impairments equivalent to a condition in the Listing of Impairments.   She does not specify which of the more than 100 regulatory Listings she meets or equals.

The claimant has the burden of proving that she meets or equals the criteria for a listed impairment based on medical evidence.  *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Tackett*, 180 F.3d at 1100; 20 C.F.R. § 416.926.  The ALJ must compare "the symptoms, signs and laboratory findings . . . shown in the medical evidence . . . with the corresponding medical criteria shown for any listed impairment."  20 C.F.R. § 416.926(a).  The claimant's description of symptoms is not sufficient to establish the presence of an impairment.  20 C.F.R. § 416.929(a); SSR 86-8.

Ms. Baxter objects that the ALJ did not compare the combined effects of her impairments to any Listing.  She has failed completely, however, to offer any theory as to how her combined impairments meet or equal a Listing; nor has she identified medical evidence showing that her

combined impairments are equivalent to a Listing. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).

Ms. Baxter's reliance on *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) is misplaced because the claimant in that case offered a plausible theory for equivalence and supported it with specific medical evidence. In *Lewis*, the Court of Appeals distinguished *Marcia,* and found that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory as to how his impairments combined to equal a Listing. *Lewis*, 236 F.3d at 512-513.

Ms. Baxter contends the ALJ should have obtained the testimony of a medical expert on the question of equivalence. Any decision as to whether a claimant's impairments are medically the equivalent of a listed impairment must be based on evidence that includes a medical judgment on that issue by one or more physicians designated by the Commissioner. SSR 86-8.

The ALJ received the documented medical judgments that the Disability Determination Services' (DDS) reviewing physicians and psychologists completed in June 1999 and updated in March and August 2000. Tr. 297-314, 473-90. Such reports of DDS physicians satisfy the regulatory requirement to obtain a medical opinion on the issue of equivalency. SSR 86-8; SSR 96-6p.

Ms. Baxter argues, nonetheless, that the ALJ should have called a medical expert to testify at the hearing. An updated opinion from a medical expert may be called for if the ALJ

believes that the medical evidence reasonably suggests equivalence or that additional medical evidence received after the DDS review could reasonably change the DDS reviewers' finding that the impairments are not equivalent to any Listing. SSR 96-6p. Neither of these grounds are present here.

**III.** **RFC Assessment**

Ms. Baxter contends the ALJ reached an inaccurate assessment of her RFC because he improperly discredited her testimony, discounted medical source statements from three physicians, failed to develop the record and failed to consider the combined effects of her impairments.

**A.** **Medical Source Statements**

Ms. Baxter contends the ALJ improperly rejected the opinions of Neal Rendelman, M.D., Gary Sacks, Ph.D., and Thomas Ellis, M.D. Dr. Rendelman was one of Ms. Baxter's primary care providers at the Old Town Clinic. Dr. Sacks performed a psychological evaluation at the request of state agency officials assessing Ms. Baxter's eligibility for General Assistance benefits. Dr. Ellis was not involved until Ms. Baxter solicited his opinion after the ALJ denied her claim.

**1.** **Dr. Rendelman**

Dr. Rendelman and his colleagues at the Old Town Clinic evaluated Ms. Baxter at the request of DDS in March 1999. They found that she had asthma and chronic obstructive

pulmonary disease (COPD) with a 20-year history of smoking, right knee disease with a plan for

future total knee replacement, shoulder pain and low back pain.  They concluded as follows:

> All in all while this patient is suffering from two chronic and
> painful diseases and somewhat disabling diseases she probably
> does not qualify or meet the criteria for medical disability.

Tr. 432.

On April 20, 1999, Dr. Rendelman opined that:

> Although she has demonstrable asthma on pulmonary function
> testing and demonstrable arthritis of the [right] knee, the patient is
> capable of doing any work for which she is qualified.
>
> The asthma will limit severe, prolonged metabolic activity such as
> walking briskly or moving heavy loads for a prolonged period of
> time, as indeed the knee arthritis would likewise do.  Nevertheless,
> she is a young person and obviously has intellectual skills which
> would qualify her for many types of open positions.

Tr. 429.

On February 8, 2000, Dr. Rendelman wrote that Ms. Baxter was receiving orthopedic and

psychological care elsewhere.  He had administered pulmonary function tests and concluded that

Ms. Baxter's moderate COPD "should not be a major limiting factor over her ability to exercise

and do work for which she is qualified."  Tr. 435.

On December 21, 2001, Dr. Rendelman wrote a note on Ms. Baxter's behalf indicating

that she "suffers from a disability . . . which seriously impairs her in several major life spheres."

Tr. 591.  Dr. Rendelman did not identify any medical condition or specify the functional abilities

it impaired.

The ALJ considered Dr. Rendelman's opinion and expressly relied on the statements

from April 1999 and February 2000 describing specific functional limitations from knee arthritis

10 - OPINION AND ORDER

and COPD.  He agreed with Dr. Rendelman that these significantly limited Ms. Baxter in some ways but left her capable of performing the basic functions required for many jobs.

Ms. Baxter contends the ALJ improperly rejected Dr. Rendelman's opinion because he did not mention the note from December 2001.  That note, however, is exceedingly general because it does not specify any functional limitations or the medical conditions from which they arise.  The ALJ could reasonably conclude that it referred in more general terms to the medical conditions and functional limitations described more fully in the statements from April 1999 and February 2000. It is also conclusory because it does not describe the medical evidence Dr. Rendelman used to reach his conclusion.  Without such foundation, there is no suggestion that Dr. Rendelman believed Ms. Baxter's condition had changed significantly after his earlier statements.

Under these circumstances, Dr. Rendelman's 2001 note was not significant or probative of Ms. Baxter's functional limitations or ability to perform basic work activities.  It is not error for the ALJ to ignore such evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

2.    **Dr. Sacks**

In October 1999, Dr. Sacks performed a psychological evaluation consisting of a diagnostic interview, mental status examination and administration of psychometric testing.  He relied on the history Ms. Baxter provided without corroboration.

11 - OPINION AND ORDER

Dr. Sack's mental status examination revealed no abnormalities. Ms. Baxter arrived on time, dressed appropriately and demonstrated normal social manner, psychomotor behavior and cognitive function. She was alert and oriented and had good reality contact without signs of psychosis. Ms. Baxter's affect was normal, mood euthymic and she denied symptoms of depression. She reported that she had never received mental health treatment. She denied feelings of sadness, hopelessness or worthlessness. She denied difficulties with concentration or memory.

Ms. Baxter described COPD since childhood and surgery on her right knee in May 1999 with a re-injury in July 1999 after a fall. She ambulated independently, but limped slightly on her right leg. She denied a history of major medical illness.

Ms. Baxter reported a history of daily alcohol abuse beginning in the 1980s and ending one week before Dr. Sack's evaluation. She described a four year period of sobriety ending in 1991, during which she worked steadily as an upholsterer. She denied any experience with drug or alcohol treatment.

Testing produced a low average IQ. Ms. Baxter's responses on the Beck Depression Index suggested only mild depression. Her responses on the MMPI-2 personality inventory produced a profile typical of persons who present themselves with physical symptoms arising from emotional conflict. Even when they have "real physical symptoms they may exacerbate their severity." Tr. 335. They tend to focus extensively on their physical symptoms.

Dr. Sacks diagnosed alcohol dependence and a substance induced mood disorder. He assessed her then-current functional level with a global assessment of functioning (GAF) of 45. A GAF between 41 and 50 indicates serious symptoms or serious impairment of social,

occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders IV*, (4th ed. 2000) (DSM-IV) 32. Dr. Sacks did not mention current limitations in social or school functioning, but noted the following regarding Ms. Baxter's level of occupational functioning:

> Ms. Baxter detailed a chronic and heavy history of daily alcohol dependence which she suggests she gave up one week ago. She is not involved in alcohol and drug treatment efforts. Unfortunately, alcohol appears to play a primary role in her vocational impairment at present. She described mild symptoms of depression which may be a direct physiological effect of her substance abuse. . . However, her symptoms of depression at this point appear mild and would not in and of themselves preclude employment.

Tr. 336.

Ms. Baxter challenges the ALJ's evaluation of Dr. Sacks' opinion, claiming that "the ALJ fails to even mention Plaintiff's extremely low GAF of 45." This is not true. The ALJ's narrative includes a discussion of the GAF in context with the quoted language from Dr. Sacks' report. Tr. 24-25. There is no indication the ALJ rejected Dr. Sack's GAF, which reflected only that at the time of the evaluation, Ms. Baxter's primary vocational impairment was alcohol abuse. In Dr. Sacks' opinion, no other psychological symptoms precluded employment.

At the hearing in April 2002, Ms. Baxter testified that she had stopped using alcohol two years earlier. Tr. 707. Dr. Sacks' GAF assessment was not probative of Ms. Baxter's level of occupational functioning in the absence of alcohol abuse. The ALJ gave due consideration and proper weight to Dr. Sacks' opinion.

### 3. Dr. Ellis

The record does not reflect any examination or treatment by Dr. Ellis before the ALJ issued his decision in July 2002. Dr. Ellis completed a Medical Source Statement worksheet in

13 - OPINION AND ORDER

March 2003, which Ms. Baxter submitted in support of her request for review by the Appeals Council.

Dr. Ellis opined that Ms. Baxter has some limitations due to her history of right knee problems, including: "patient may need to periodically elevate right leg to alleviate pain and for swelling." Tr. 674.

Ms. Baxter contends the ALJ erred by failing to elicit testimony from the VE with a hypothetical question reflecting that she may need to elevate her right leg. This argument has no merit. Obviously, the ALJ cannot anticipate future medical findings.

Nor did the Appeals Council commit legal error. The Appeals Council considered Dr. Ellis's medical source statement and concluded that it did not provide a basis for changing the ALJ's decision. Accordingly, it denied Ms. Baxter's request for review. 20 C.F.R. § 416.1470(b).

The Appeals Council's action denying the claimant's request for review is not a final decision of the Commissioner. 20 C.F.R. § 416.1481. Accordingly, it is far from clear that this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review that action .

Assuming the denial of Ms. Baxter's request can be reviewed here, the Appeals Council did not err. The Appeals Council must review the ALJ's decision if additional evidence is submitted that is new, material and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b); *Ramirez v. Shalala,* 8 F.3d 1449, 1451- 54 (9th Cir.1993). Dr. Ellis's medical source statement described Ms. Baxter's functional limitations eight months after the ALJ's decision and did not relate to the relevant period.

### B. <u>Credibility Determination</u>

14 - OPINION AND ORDER

Ms. Baxter testified that she worked at an upholstery shop for at least 10 years. She became disabled in September 1996 and worked off and on after that as a fast food worker at Burger King. She last worked in October 2000.

She testified that part of her liver was removed in 1980 because of a tumor. She learned from donating blood that she has hepatitis C virus and HTLV virus. She has not received any treatment for these and has not had any symptoms. Her blood work has been normal.

Ms. Baxter testified that she has had asthma and chronic bronchitis for over 20 years. In the month before the hearing, she cut down her smoking to one or two cigarettes a day to help with her cough.

Ms. Baxter testified that she developed low back pain since her knee replacement surgery in December 1999. She has trouble lifting and bending because of this and pain with sitting, standing or walking too long. She testified that primarily because of back pain, "pretty much I'm laying down most of the day." Tr. 705.

Ms. Baxter testified that she has difficulty getting down on her right knee or climbing stairs because it is painful to bend her knee. She has had shoulder pain "now and then" for about two years. Tr. 698. This makes it painful to raise her arms to shoulder level. She has also had sporadic pain with gripping and some difficulty with memory and concentration.

Ms. Baxter testified that she is able independently to clean her apartment, vacuum, sweep, cook and shop for groceries. She does not mop or climb stairs. She independently can get herself to appointments with physicians. She socializes with neighbors in her building and watches television.

Ms. Baxter testified that she has a history of drug and alcohol abuse, but she has been clean since moving away from an abusive domestic situation about two years before the hearing.

The ALJ found that Ms. Baxter's testimony regarding functional limitations and the intensity of her pain was only partially credible. He found that the record supported her allegations of pain in the right knee, shoulders and back, and limitations from asthma and chronic bronchitis; he rejected only her claim that these are so severe as to preclude all work.

An ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. He may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id*. *See also* SSR 96-7p.

Here the ALJ considered proper factors and made specific findings to support his credibility determination. The ALJ noted that Ms. Baxter's allegations of debilitating pain were disproportionate to the mild objective findings. Based on a review of the entire medical record he concluded that she remained capable of performing a broad range of work requiring no more than light exertion. In doing so, the ALJ adopted most of the findings of the DDS reviewing physicians, but diverged from them to give Ms. Baxter the benefit of the doubt regarding her

limitations in standing and walking. Ms. Baxter has not identified any objective evidence suggesting that the ALJ's conclusions are incorrect.

The ALJ also considered the opinions of treating and examining physicians who found Ms. Baxter's medical conditions were not disabling. For example, he relied on Dr. Rendelman's opinion that she remained "capable of doing any work for which she is qualified." Tr. 429, 435. As described previously, Dr. Sacks opined that her psychological condition would not preclude employment in the absence of substance abuse.

The ALJ next found that her treatment record did not support the presence of debilitating back pain. Although she testified that severe daily back pain caused her to lay down most of the day, the record shows only three occasions on which she sought treatment for back pain. The ALJ could reasonably conclude that she would have pursued more aggressive treatment if her pain were as intense and persistent as she claimed. Similarly, the ALJ did not believe her asthma and chronic bronchitis were as limiting as she claimed because she persistently disregarded medical advise to stop smoking.

The ALJ also relied on Ms. Baxter's reported daily activities to conclude that her impairments were not as severe as she described in her testimony. She reported that she is able to independently cook, shop, clean her apartment, launder her clothing and wash her dishes. She does not need help with her personal hygiene and grooming. While such basic activities are not equivalent to the sustained exertion required for competitive employment, they are clearly inconsistent with Ms. Baxter's assertion that she must lay down most of the day.

Based on the foregoing, the ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Ms. Baxter's testimony regarding the severity of her

symptoms. *Dodrill*, 12 F.3d at 918; *Smolen*, 80 F.3d at 1283. His findings are sufficiently specific to permit this court to conclude that he did not discredit her testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

**C.     Combined Effects of Impairments**

Ms. Baxter contends the ALJ failed to consider her impairments in combination as required by 20 C.F.R. § 416.923.

The narrative in the ALJ's decision reflects that he considered all the evidence of Ms. Baxter's impairments, symptoms, and functional limitations. He incorporated into his RFC assessment all the functional limitations that were reasonably supported by the evidence, without separating their effects based on the medical diagnosis or combination of diagnoses from which they arose. The ALJ properly considered all of Ms. Baxter's allegations of pain and the functional limitations caused by pain without regard for where the pain originated. By evaluating all evidence of Ms. Baxter's functional limitations, the ALJ properly considered them in combination.

Ms. Baxter does not identify any functional limitations arising from the combination of her impairments that exceed those in the ALJ's RFC assessment. Accordingly, she has failed to support her burden of showing the existence of additional functional limitations.


**III.     Development of the record**

Ms. Baxter's final argument is that the ALJ failed to fully and fairly develop the record because he did not obtain medical records identified by Ms. Baxter's counsel at the hearing. At

the hearing on April 23, 2002, Ms. Baxter's counsel informed the ALJ of recent records from the Old Town Clinic and asked that he obtain them for addition to the case record. Tr. 688-89.

Ms. Baxter's argument is not supported by the facts. On May 14, 2002, the Old Town Clinic responded to a request for Ms. Baxter's records and they were added to the case record. Tr. 665-72.

## **CONCLUSION**

In conclusion, the errors asserted by Ms. Baxter do not have merit. The Commissioner's final decision that Ms. Baxter does not suffer from a disability and is not entitled to supplemental security income payments under Title XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this __15th__ day of December, 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

19 - OPINION AND ORDER